UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| **COLUMBIA PARKERSBURG HEALTHCARE SYSTEM, LLC** | § § § § | CAUSE No. 2:17-cv-03768 |
| **Plaintiff,** | § § | |
| v. | § § | JURY DEMAND |
| **CAMDEN-CLARK MEMORIAL HOSPITAL CORPORATION,** | § § § § | |
| **Defendant.** | § § § | |

## PLAINTIFF COLUMBIA PARKERSBURG HEALTHCARE SYSTEM, LLC'S COMPLAINT

Plaintiff Columbia Parkersburg Healthcare System, LLC ("Plaintiff")[1] files this Complaint against Defendant Camden-Clark Memorial Hospital Corporation ("Defendant") and alleges the following:

## I.
## PARTIES

1. Plaintiff is a limited liability company whose sole member, Galen Holdco LLC, is incorporated in and organized under the laws of Delaware, with its principal place of business located at One Park Plaza, Nashville, Tennessee 37203. Galen Holdco LLC's sole member, Healthtrust, Inc., is incorporated in and organized under the laws of Tennessee, with its principal place of business located at One Park Plaza, Nashville, Tennessee 37203.

---

[1] Including Plaintiff's affiliates.

2. Defendant is incorporated in and organized under the laws of West Virginia, with its principal place of business located at 800 Garfield Avenue, Parkersburg, West Virginia 26101.

## II.
## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the amount in controversy is in excess of $75,000.00, exclusive of interest and costs, and Plaintiff and Defendant are citizens of different states.

4. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this judicial district.

## III.
## FACTUAL BACKGROUND

5. Through this lawsuit, Plaintiff seeks to recover $195,577.00 in Medicare reimbursement money improperly held by Defendant for healthcare services provided at St. Joseph's Hospital ("St. Joseph's" or the "Hospital") prior to 2006, when Plaintiff's affiliates owned the Hospital.

6. Plaintiff successfully recovered the funds at issue by first appealing to the Medicare Provider Reimbursement Review Board, and thereafter initiating a federal court suit, together with several hundred other hospitals, challenging the Centers for Medicare & Medicaid Services' ("CMS") Ruling Number 1498-R ("1498 Appeal"). This CMS ruling dealt with the calculation of government funding for offsetting uncompensated care costs incurred by hospitals that treat large numbers of indigent patients ("Disproportionate Share Payment"). Upon information and belief, Defendant did not participate in or otherwise finance the costs of the 1498 Appeal.

7. Plaintiff and the other hospitals involved in the 1498 Appeal eventually entered into a Settlement Agreement, effective June 25, 2016, with the United States Department of Health and

Human Services ("HHS") and the Secretary of HHS, including CMS, to resolve Disproportionate Share Payments due to the providers for fiscal years 2004 and earlier. Per this Settlement Agreement, HHS agreed to pay the 1498 Appeal participants through the applicable facility provider numbers via its Medicare Administrative Contractors ("MAC").[2]

8. In or around September 2016, the MAC responsible for discharging payments to St. Joseph's (identified by Provider Number 51-0033) informed Plaintiff that a Settlement Agreement payment for the 1498 Appeal was paid to the current holder of the Medicare Provider Agreement, Defendant.

9. Because these amounts were to be paid by Provider Number (to the current holder of the Medicare Provider Agreement) under the Settlement Agreement, Plaintiff did not receive the Disproportionate Share Payment directly, even though they related to uncompensated costs incurred during Plaintiff's period of ownership. A Provider Number is assigned under a Medicare Provider Agreement, which is separate from the actual hospital facility.

10. Plaintiff contacted Defendant in an attempt to trace and recover the funds, and Defendant confirmed that it received the Settlement Agreement payment. Specifically, on July 25, 2016, Defendant received $195,577.00 for services provided in fiscal years ("FY") January 31, 2002 through 2004. This total amount included $84,966.00 for FY 2002, $17,832.00 for FY 2003, and $92,759.00 for FY 2004. Defendant, however, refused to remit payment to Plaintiff, even though Plaintiff demonstrated that it contractually retained ownership of the funds at issue.

11. This Medicare Disproportionate Share payment relates to reimbursements for uncompensated costs of care for FYs 2002 through 2004 and is rightfully owed to Plaintiff. Plaintiff's affiliates owned and operated St. Joseph's until 2006, when Plaintiff sold the Hospital.

---

[2] Interest would be applied to amounts owed in the event payment was not made in full by this date.

Plaintiff entered into a Stock Purchase Agreement, dated July 14, 2005, and as amended on June 2, 2006 and June 30, 2006 ( collectively, "SPA"), with LifePoint Hospitals, Inc. ("LifePoint"). Pursuant to the SPA, Plaintiff sold its interest in St. Joseph's but retained all rights to Medicare, Medicaid, and other cost-based third party reimbursements or receivables related to its ownership period.  These receivables would encompass Plaintiff's Medicare Disproportionate Share Payment for FYs 2002 through 2004 that Defendant wrongfully holds.

12. In late 2006, LifePoint subsequently entered into an Equity Interest Purchase Agreement ("EIPA") with a company called Signature Hospital, LLC ("Signature").  Per the EIPA, LifePoint did not purport to sell any interest in cost report receivables rightfully retained by Plaintiff under the SPA.  Thus, Signature could not have obtained any right to pre-2006 receivables, and could not validly transfer rights to these receivables to any other entity.

13. Upon information and belief, Signature entered into an Asset Purchase Agreement ("APA") with Defendant for the sale of the facility in 2011.  Regardless of the APA's terms, and the terms of any other agreements between Signature and Defendant, Defendant could not have obtained rights to cost report receivables for FY 2006.  Plaintiff specifically reserved these rights in its 2006 SPA with LifePoint.

14. However, when Plaintiff contacted Defendant to obtain the Settlement Agreement payment, Defendant refused to transfer the payment to Plaintiff and instead claimed that Signature bargained away the rights to all cost report receivables prior to the closing date of the APA, indicating that Defendant believed it was the rightful owner of the FY 2002 through 2004 Settlement Agreement payment even though it did not operate the facility during those years.

15. Defendant has no legal or equitable right to retain the $195,577.00 Medicare Disproportionate Share Payment it received.  This reimbursement payment relates to

uncompensated care costs for treatment of indigent payments expended over a decade ago by Plaintiff.  Defendant did not operate St. Joseph's during the FYs covered by the payment, did not provide care to indigent patients at the Hospital during those years, and did not contribute to or otherwise take part in the 1498 Appeal to recover the Disproportionate Share Payment.  This money rightfully belongs to Plaintiff.

## IV.
## CAUSES OF ACTION

### COUNT I—CONVERSION

16.	Plaintiff hereby adopts and incorporates by reference the allegations of the preceding paragraphs of this Complaint, as though set-forth verbatim herein.

17.	Plaintiff has an immediate legal right to possession with respect to the $195,577.00 Medicare Disproportionate Share Payment at issue in this lawsuit.  Plaintiff obtained a favorable settlement for uncompensated costs of indigent patient care in the 1498 Appeal, and the payment received by Defendant was made pursuant to the 1498 Appeal Settlement Agreement.  The $195,577.00 Medicare Disproportionate Share Payment related to FYs 2002 through 2004, when Plaintiff owned the Hospital.  Plaintiff retained all ownership rights to cost reimbursements or receivables relating to pre-2006 FYs when it sold St. Joseph's to LifePoint in 2006.

18.	The $195,577.00 Medicare Disproportionate Share Payment constitutes personal property that is subject to conversion.

19.	Defendant wrongfully and unlawfully holds the $195,577.00 Medicare Disproportionate Share Payment.  Plaintiff demanded that Defendant remit the Medicare Disproportionate Share Payment to Plaintiff and presented Defendant with the contractual agreement under which Plaintiff retained all ownership rights to cost reimbursements or receivables relating to pre-2006 FYs.

20.     Plaintiff was damaged as a result of Defendant's continued wrongful and unlawful retention of the $195,577.00 Medicare Disproportionate Share Payment Defendant received on July 25, 2016.

## COUNT II—UNJUST ENRICHMENT

21.     Plaintiff hereby adopts and incorporates by reference the allegations of the preceding paragraphs of this Complaint, as though set-forth verbatim herein.

22.     Plaintiff provided indigent patient care from 2002 through 2004 when it owned St. Joseph's.  Plaintiff spent time and resources participating in a legal action challenging the manner in which CMS calculated funding for offsetting uncompensated care costs incurred by hospitals that treat large numbers of indigent patients.  The legal action was successful and resulted in a settlement of $195,577.00, with potential for additional future amounts to be owed to Plaintiff.

23.     The SPA that Plaintiff entered into with LifePoint specifically provided that Plaintiff retained all rights to Medicare, Medicaid, and other cost-based third party reimbursements or receivables related to its ownership period, which includes the aforesaid $195,577.00 Medicare Disproportionate Share Payment.

24.     Payments by MAC of the settlement funds were made based upon the current holder of the Medicare Provider Agreement, which was Defendant.  Thus, although the Medicare Disproportionate Share Payment was owed to Plaintiff, Defendant received the funds.

25.     Defendant received a benefit in the form of a $195,577.00 payment for care it did not provide, which was obtained from a legal action to which it was not a party and in which it did not participate.

26. Defendant was well aware and appreciated that it received the $195,577.00 Medicare Disproportionate Share Payment from MAC for services it had not provided, which were obtained from a legal action to which it was not a party and in which it did not participate.

27. Plaintiff contacted Defendant regarding the $195,577.00 Medicare Disproportionate Share Payment and Defendant acknowledged receipt thereof.

28. Plaintiff's retention of the Medicare Disproportionate Share Payment is unjust and inequitable because: (a) Plaintiff provided the indigent patient care for which the Medicare Disproportionate Share Payment was issued; (b) Plaintiff expended time and resources pursuing a legal action to obtain the Medicare Disproportionate Share Payment; (c) the SPA that Plaintiff entered into with LifePoint specifically provided that Plaintiff retained all rights to Medicare, Medicaid, and other cost-based third party reimbursements or receivables related to its ownership period; (d) Defendant did not provide the indigent patient care for which the Medicare Disproportionate Share Payment was issued; (e) Defendant was not a party to and did not participate in the legal action that obtained the Medicare Disproportionate Share Payment; and (f) it would constitute an unearned, undeserved windfall for Defendant.

29. Equity dictates that the Medicare Disproportionate Share Payment be remitted to the party that incurred the cost of treating the relevant patients and participated in the legal action to obtain the money—Plaintiff.

## V.
## PRAYER

WHEREFORE, Plaintiff Columbia Parkersburg Healthcare System, LLC respectfully requests that Defendant Camden-Clark Memorial Healthcare Corporation be cited to appear and answer herein and upon final hearing, Plaintiff Columbia Parkersburg Healthcare System, LLC be awarded $195,577.00 in damages, as may be shown at trial, pre-judgment and post-judgment

interest, costs of court, attorney's fees, and for such other and further relief, both at law and in equity, to which it may justly show itself entitled.

Dated: August 7, 2017

                                              Respectfully submitted,

                                              **COLUMBIA PARKERSBURG HEALTHCARE SYSTEM, LLC,**

                                              **By Counsel.**

*/s/ David K. Hendrickson*        *08/07/2017*
David K. Hendrickson, Esquire (W.Va. Bar #1678)
John K. Cecil, Esquire (W.Va. Bar # 9155)
**HENDRICKSON & LONG, PLLC**
214 Capitol Street (zip 25301)
P.O. Box 11070
Charleston, West Virginia  25339
Tel:  (304) 346-5500
Fax:  (304) 346-5515
daveh@handl.com
jcecil@handl.com